In the Matter of the Application of EUROMEPA, S.A., formerly known as P.N.C. S.A., successor in interest of Mepa France, S.A., and Allied Insurance and Reinsurance Company for an Order to Conduct Discovery of Ralph Esmerian, Inc. for Use in a Foreign Country, to Wit, the Republic of France, in a Civil Proceeding there Pending Against Mepa France, S.A. and Allied Insurance and Reinsurance Company.

No. M–77.

United States District Court,
S.D. New York.

May 10, 1994.

Mound, Cotton & Wollan, New York City, for petitioners (Costantino P. Suriano, of counsel).

Debevoise & Plimpton, New York City, for respondent R. Esmerian, Inc. (Meredith M. Brown, Barton Legum, and Carl Micarelli, of counsel).

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge:

Euromepa, S.A. ("MEPA") and Allied Insurance and Reinsurance Company ("Allied") petition for an order, pursuant to 28 U.S.C. § 1782, compelling Ralph Esmerian, Inc. ("Esmerian") to produce certain documents and certain witnesses for deposition in order to obtain evidence to be used in a pending civil proceeding in the Republic of France. For the following reasons, MEPA's motion is denied.

### BACKGROUND

This dispute arises from a litigation in France commenced by Wolfers Trading Zug AG ("Wolfers"), a Swiss jewelry dealer, on February 28, 1991, against MEPA and Allied in the Tribunal de Commerce of Nanterre, France (the "Commercial Court"). Esmerian intervened on June 28, 1991, and Wolfers subsequently assigned its rights of action against MEPA and Allied to Esmerian. On January 15, 1993, the Commercial Court entered a judgment holding MEPA liable to Esmerian in the amount $10,127,500. (See Judgment in *Wolfers Trading Zug. AG v. EUROMEPA*, Jan. 15, 1993 at 8, attached as Ex. A to Quint Decl. with certified translation (hereinafter the "Judgment")). MEPA has appealed the Judgment to the Cours D'Appel in Versailles (the "French Court of Appeals"), and a hearing has been scheduled for December 13, 1994. (Quint Decl. ¶ 14).

In the Judgment, the Commercial Court specifically found that Wolfers entrusted certain jewelry belonging to Esmerian to a Mr. Ghassan Fakhreddin ("Fakhreddin") to be shown for sale in the United Arab Emirates. Wolfers obtained insurance from Allied through MEPA. Later, MEPA represented to Wolfers that the coverage for infidelity of courier was not necessary because MEPA indicated that the risk of Fakhreddin defalcation was slight and nearly improbable. Wolfers changed its policy relying on this representation. In the end, Fakhreddin never returned a quantity of jewelry valued at $26 million, for which Wolfers was uninsured. (Judgment at 2). The Commercial Court concluded that MEPA had breached its duty

as Wolfers' insurance broker by falsely informing Wolfers that Fakhreddin was trustworthy. The Commercial Court also found that Wolfers and MEPA were equally at fault and entered judgment for $10,127,500. The court dismissed the claims against Allied. (Judgment at 8–9).

MEPA now seeks documents and deposition testimony regarding, *inter alia*, proof of ownership of the jewelry, proof of the value of the jewelry, proof of Esmerian's insurable interest in the jewelry, and proof as to which jewelry was actually recovered. MEPA contends that not all relevant documents were produced in the French Action. (Suriano Aff. ¶ 7).

## DISCUSSION

■ Congress has given litigants in international tribunals, or the tribunal itself, the ability to seek from district court orders compelling production of documents and witnesses of those residing in the United States. 28 U.S.C. § 1782. District courts, however, have wide discretion when considering applications under § 1782. *In re Application of Gianoli*, 3 F.3d 54, 59 (2d Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 443, 126 L.Ed.2d 376 (1993). By its terms, 28 U.S.C. § 1782 requires that: (1) the person from whom discovery is sought must reside or be found in the district of the district court to which the application is made; (2) the discovery must be for use in a proceeding in a foreign or international tribunal; and (3) the application must be made by a foreign or international tribunal or by any interested person. *See id.* at 58–59. The parties do not dispute that MEPA has established that all three of these elements exist.

■ In addition, a district court is required to take into account policy concerns that often arise in the nebulous area of international law. The Legislative History particularly states:

[i]n exercising its discretionary power, the court may take into account the nature and

attitudes of the government of the country from which the request emanates and the character of the proceeding in that country.

S.Rep. No. 1580, 88th Cong., 2nd Sess. (1964), *reprinted in* 1964 U.S.C.C.A.N. 3782, 3788 (hereinafter "Senate Report"). The Court of Appeals for the Second Circuit has further explained that a district court should maintain "the balance between litigants that each nation creates within its own judicial system, preventing circumvention of foreign restrictions on discovery and avoiding offense to foreign tribunals." *Gianoli*, 3 F.3d at 60. *See also In re Application of Asta Medica, S.A.*, 981 F.2d 1, 7 (1st Cir.1992).

■ When exercising its discretion, the district court should also be guided by the statute's "twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our court." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 179, 121 L.Ed.2d 125 (1992). Thus, in determining a § 1782 application, a balance must be struck between the policy of not infringing upon a foreign nation's procedural rules with the policy of promoting the efficient resolution of dispute in a foreign tribunal.

Hence, an understanding of French procedural law, albeit a superficial one, is a necessary step for this inquiry. Unlike Courts of Appeals in the United States, the French Courts of Appeals hear and consider *new* evidence as part of the appellate process, even if the evidence was never submitted to the Commercial Court. (Honig ¶ 6–7). Thus, MEPA will apparently be permitted to submit and introduce on appeal any new evidence it may discover.[1]

French rules on gathering and submitting evidence are strictly controlled by the French courts. For instance, the parties are responsible for evidence they supply to the

---

1. The claim against Allied was dismissed by the Commercial Court, and it is not a party to the appellate proceedings pending before the French Court of Appeals. Therefore, it appears that Allied will not be able to submit any new evi-

dence to the French Court of Appeals. Indeed, I cannot fathom why Allied is seeking this petition when it already has had the substantive issues resolved in its favor.

court in support of their written and oral pleadings. While the parties may direct the judge to documents in their possession that they deem relevant and may suggest documents or testimony in the possession of others that the judge may wish to examine, the judge retains the authority to decide whether such documents or testimony are to be produced to the court. In addition, under French civil procedure, the parties to an action exchange the documents they intend to rely upon in advance of their submission to the court. (New Code of Civil Procedure and Related Laws, Art. 132–137 in *French Law: Constitution and Selective Legislation* (George A. Bermann, Henry P. de Vries, and Nina M. Galston, eds.) (hereinafter "French New Code")). Apparently, the parties in this case did exchange many documents. (Quint Decl. ¶ 17).

More importantly, no mechanism exists in French procedure for a party to require production of other documents from an adversary without judicial intervention. A party may ask the court to order the production of specific documents that are in the possession of another party or a third person. These provisions, however, can only be used to obtain specific documents for use as evidence and cannot be used for pretrial exploratory discovery. (French New Code, Art. 138–142). No party in this case sought to use these procedural mechanisms in attempting to obtain documents. (Quint Decl. ¶ 19). In addition, French law does not provide any mechanism for a party to take a pretrial deposition of an adversary. Oral examination of a witness can only be conducted by a judge on court order. (French New Code, Art. 184–198).

■ This review of French procedure establishes that the elected representatives of France have, as a matter of policy, determined pre-trial discovery and use of evidence is controlled by the court and not the parties. This policy determination must be fully accounted for when balancing the various policy concerns outlined above. Granting this petition would undeniably infringe on the power that the French legislature has bestowed to its courts. MEPA, instead of the French Court, would control the process by which any evidence was obtained and submitted. Such a decision would be contrary to the policy formulated and instituted by the French Legislature.

■ This is particularly true here, where a mechanism was available for MEPA to seek such documents while in the French courts. Indeed, the documents it wishes to discover appear to be of great import for the substantive issues of this case. Yet, MEPA failed to even attempt to use the mechanism provided by French procedure for obtaining documents. MEPA claims it cannot obtain these documents through French procedure. Once Esmerian, however, submits to the jurisdiction of French courts, it must comply with all orders of the French court or face punitive measures. (*See* French New Code, Art. 169). Indeed, Esmerian has asserted that it will comply with any order of the French courts to produce documents under French laws. (Quint ¶ 20). While it is not necessary for a litigant to exhaust all discovery requests in the foreign tribunal prior to making a § 1782 petition, *Malev Hungarian Airlines*, 964 F.2d at 100, MEPA's failure to seek production of documents and witnesses through the French courts cannot be disregarded when considering "the nature and attitudes" of France toward discovery. *See* Senate Report at 3788.

In addition, under French procedure, once a party asks the court to produce certain documents, it is obligated to use those documents, regardless of which party the documents benefit. (*See* French New Code, Art. 132–137, 146, 157, 160). Thus, it appears that MEPA is simply attempting to do something that the French rules bar: examine documents that it may not wish to use in court. Section 1782, however, was not enacted to provide litigants in an international tribunal with liberal American discovery rules whenever an adversary is a United States resident. Instead, § 1782 was enacted to assist the efficiency of a proceeding in a foreign nation without infringing upon the procedural rules established by that foreign nation.

■ In this case, allowing MEPA to use American discovery rules would not promote

**84**

the efficiency of the pending appeal in France. MEPA can simply seek these documents through the French courts using French rules. I am unwilling to impose on the French courts a discovery system that it has rejected in a case where France has provided a mechanism to obtain these documents.[2] In sum, when balancing the policy concerns of § 1782, I determine that granting this petition would infringe on the French courts while not promoting the efficiency of the pending appeal in France. Accordingly, MEPA's and Allied's petition is denied.

SO ORDERED.

---

**2.** MEPA argues that not granting this petition amounts to imposing a threshold requirement that the documents be "discoverable" under French procedure. While this is the rule in certain circuits, *see, e.g., Asta Medica,* 981 F.2d at 7, it has been explicitly rejected by the Court of Appeals for the Second Circuit. *Gianoli,* 3 F.3d at 60. Whether the evidence MEPA seeks would be discoverable in France or not is unknown and irrelevant to me. My decision is based on the determination that granting this petition would be an *unwarranted* intrusion into France's system of evidence gathering.