154 F.3d 24
 In the Matter of the Application of EUROMEPA, S.A., f/k/a
P.N.C. S.A., successor in interest of Mepa France,
S.A.; Allied Insurance & Reinsurance
Company, Petitioners-Appellants,
v.
R. ESMERIAN, INC., Respondent-Appellee.
 Docket No. 97-7333.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 10, 1997.
Decided Aug. 10, 1998.
 
 Constantino P. Suriano, New York, NY (Jeffrey C. Crawford and Michael T. Altman, Mound, Cotton & Wollan, New York, NY, of counsel), for Petitioners-Appellants.
 Barton Legum, New York, NY (Meredith M. Brown and Neil S. Binder, Debevoise & Plimpton, New York, NY, of counsel), for Respondent-Appellee.
 BEFORE: OAKES, PARKER, and WOOD, JR.,* Circuit Judges.
 PARKER, Circuit Judge:
 
 
 1
 Petitioners-Appellants Euromepa, S.A. ("Euromepa") and Allied Insurance and Reinsurance Company ("Allied", and together with Euromepa "Petitioners") appeal from an endorsement order, entered February 27, 1997, in the United States District Court for the Southern District of New York (Kevin T. Duffy, Judge ) dismissing as moot their petition pursuant to 28 U.S.C. § 1782 for discovery in aid of foreign proceedings of Respondent-Appellee R. Esmerian & Co. ("Esmerian"). For the following reasons, we affirm the judgment of the district court.
 
 I. BACKGROUND
 
 2
 Euromepa, a French corporation, is an insurance broker under common control with Allied, a Cyprus corporation, which is an insurer and reinsurer. Esmerian, a New York corporation, is a diamond and jewelry dealer. The underlying dispute in this case involves the disappearance of approximately $ 20 million in jewelry owned by Esmerian and insured by Allied through Euromepa.
 
 
 3
 Affiliates of Esmerian sued Euromepa and Allied in the Commercial Court of the First Instance in Nanterre, France (the "French Trial Court") regarding the loss and insurance of this jewelry (the "French Action"). These affiliates alleged fraudulent conduct by Euromepa and Allied in misrepresenting certain facts regarding the trustworthiness of a courier to be used to transport the jewelry, and counseling Esmerian's affiliates to not take insurance for breach of trust by the courier. Esmerian itself subsequently intervened in this action to assert its rights, eventually taking an assignment of its affiliates' rights in the action, and thus leaving Esmerian as the sole plaintiff.
 
 
 4
 The French Trial Court found in favor of Esmerian, and issued a judgment of approximately $ 10 million in favor of Esmerian and against the Petitioners. The French Trial Court held that Esmerian and the Petitioners were equally at fault for the loss, and that the loss should therefore be split evenly between them. Following this ruling, and after perfecting their appeal therefrom, Petitioners filed a § 1782 petition (the "Petition"), by order to show cause, in the Southern District of New York, seeking discovery of Esmerian regarding, among other things, proof of ownership of the jewelry, prior insurance of the jewelry, agreements between Esmerian and its affiliates, and substantiation of the jewelry lost. Petitioners sought this discovery for use in the appeal of the French Trial Court's judgment.[1] The district court denied the Petition in a Memorandum and Order, dated May 10, 1994. Application of Euromepa, S.A., 155 F.R.D. 80 (S.D.N.Y.1994). In doing so, the district court focused largely on the French system of discovery, and concluded that granting the Petition might constitute an affront to the French system. Id. at 82-84. Petitioners timely appealed to this Court.
 
 
 5
 After the Petitioners' appeal was argued in this Court, but before this Court rendered a decision, the Court of Appeal of Versailles (the "French Court of Appeal") affirmed the judgment of the French Trial Court, and amended that judgment in a manner favorable to Esmerian. The French Court of Appeal held that "[Esmerian] did not itself commit any misconduct ... [and] due to the failure to carry out its duties as consultant and the blatant fraud on [Euromepa's] part, the responsibility cannot be split with the insured party." The French Court of Appeal accordingly entered a judgment holding Euromepa liable for the entire $ 20 million loss. Immediately following this judgment, Euromepa filed a petition seeking French bankruptcy protection (the "French Bankruptcy Proceeding").
 
 
 6
 On March 9, 1995, Esmerian filed a motion in this Court seeking to have Petitioners' appeal dismissed as moot on the basis of the ruling of the French Court of Appeal. Esmerian argued that the appeal was moot because there was no longer any foreign action pending in which the discovery could be used. On March 20, 1995, this Court, without addressing the motion to dismiss the appeal, issued an opinion reversing the district court, and remanding the case for further proceedings. Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095 (2d Cir.1995) ("Euromepa I "). Later that month, on March 27, 1995, Petitioners perfected their appeal of the judgment of the French Court of Appeal to the French Cour de Cassation (the "French Supreme Court").
 
 
 7
 In response to Esmerian's March 9 motion to dismiss the appeal, this Court (on March 29, 1995) issued an order which construed Esmerian's motion to dismiss the appeal as a motion to withdraw an opinion, stayed the issuance of the mandate, and requested additional briefing as to why the parties did not "advise this Court promptly of the circumstances alleged to have mooted this appeal." Subsequently, on April 11, 1995, this Court denied the motion to withdraw the opinion, noting that we were doing so "without prejudice to any consideration of the intervening developments by the district court."
 
 
 8
 On remand, Esmerian filed a motion to dismiss the Petition as moot in the district court. The parties completed briefing on the motion to dismiss in June of 1995. The district court, however, took no action on the motion despite a series of letters for Euromepa, and responses from Esmerian, which sought a ruling.
 
 
 9
 Finally, in February of 1997, the French Supreme Court affirmed the judgment of the French Court of Appeal. The French Supreme Court found Petitioners' appeal to it to be an abuse of process, and sanctioned the liquidator of Euromepa for pursuing that appeal. Immediately after this ruling, the district court entered the endorsement order dismissing the Petition as moot because the final judgment of the French Supreme Court eliminated all pending proceedings in which Petitioners sought to use the discovery. This appeal followed.II. THE APPLICABLE LEGAL PRINCIPLES
 
 A. Standard of Review
 
 10
 As we noted in Petitioners' initial appeal, "[w]e review the district court's decision for abuse of discretion.... But to say that a district court may or may not, in its discretion, order discovery, does not mean that it is free to do so on inappropriate grounds." Euromepa I, 51 F.3d at 1097 (citation omitted). We have also previously held that:
 
 
 11
 A review of a district court's decision under § 1782, therefore, has two components: the first, as a matter of law, is whether the district court erred in its interpretation of the language of the statute and, if not, the second is whether the district court's decision to grant discovery on the facts before it was in excess of its discretion.
 
 
 12
 Esses v. Hanania (In re Esses), 101 F.3d 873, 875 (2d Cir.1996) (per curiam).
 
 
 13
 Thus, we review de novo the district court's determination as to whether the statutory requirements of § 1782 are met, and if we are satisfied that these requirements are met, we review the district court's decision on whether to grant discovery for abuse of discretion. However, we review de novo the question of whether the statute imposes any particular limitations on the exercise of that discretion. Foden v. Gianoli Aldunate (In re Gianoli Aldunate), 3 F.3d 54, 58 (2d Cir.1993); see Malev Hungarian Airlines v. United Technologies International Inc. (In re Malev Hungarian Airlines), 964 F.2d 97, 100-01 (2d Cir.1992).
 
 B. The Statutory Requirements
 
 14
 Section 1782 provides, in pertinent part, "[t]he district court ... may order ... [discovery] for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). This Court has held that § 1782 requires that a three part test must be met prior to its invocation:
 
 
 15
 (1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or "any interested person."
 
 
 16
 Esses, 101 F.3d at 875 (quoting Gianoli Aldunate, 3 F.3d at 58). In analyzing the second element of this test, which is the only one in dispute in this case, we have, as discussed below, previously focused on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding.
 
 
 17
 The seminal case in this Court regarding the analysis of whether a foreign proceeding is adjudicative in nature is In re Letters Rogatory Issued by Director of Inspection of Government of India, 385 F.2d 1017 (2d Cir.1967) (Friendly, J.) ("India "). In India, this Court interpreted the meaning of the phrase "a proceeding in a foreign or international tribunal" in the context of an Indian income tax assessment proceeding. This Court concluded that the tax assessment proceeding in question was not a proceeding before a "tribunal" because the role of the government in the administrative proceeding was more akin to a prosecutorial decision to bring a case than to that of a neutral arbitrator, and therefore the proceeding was not adjudicative. Id. at 1020-21. Thus, in India, and later in Fonseca v. Blumenthal, 620 F.2d 322, 323-24 (2d Cir.1980) (analyzing the function of the Superintendent of Exchange Control under Colombian law), this Court explicitly engaged in an analysis of foreign law to determine if a particular proceeding was adjudicative in nature, and therefore whether it could serve as a proper predicate for a § 1782 petition. We have subsequently held that competency proceedings, Gianoli Aldunate, 3 F.3d at 62, and bankruptcy proceedings, Lancaster Factoring Co. v. Mangone, 90 F.3d 38, 42 (1996), may constitute adjudicative proceedings for purposes of § 1782.
 
 
 18
 This Court first visited the pendency question raised by the second element of the Gianoli Aldunate test in General Universal Trading Corp. v. Morgan Guaranty Trust Co. (In re International Judicial Assistance (Letter Rogatory) for the Federative Republic of Brazil), 936 F.2d 702 (2d Cir.1991) ("Brazil "). In Brazil, we considered whether an adjudicative proceeding must actually be pending to satisfy the requirements of *28s 1782. We held that a proceeding need not actually be pending, but rather that a proceeding must be "imminent--very likely to occur and very soon to occur." Id. at 706; see also In re Request for Assistance from Ministry of Legal Affairs of Trinidad & Tobago, 848 F.2d 1151, 1156 (11th Cir.1988) ("Trinidad & Tobago ") (holding that a proceeding must be "very likely to occur"). But see In re Letter of Request from the Crown Prosecution Service of the United Kingdom, 870 F.2d 686, 691 (D.C.Cir.1989) ("Crown Prosecution ")(requiring that a proceeding be "in reasonable contemplation").
 
 
 19
 In determining whether the above statutory requirements of § 1782 are met, we have held that there is no requirement of discoverability implied in the statute; that is, the district court need not satisfy itself that the discovery sought in the petition is of information that would be discoverable under the laws of the foreign jurisdiction in which the proceeding is pending. Gianoli Aldunate, 3 F.3d at 59; see also In re Bayer A.G., 146 F.3d 188 (3d Cir.1998). This holding is in contrast to the First and Eleventh Circuits, see In re Application of Asta Medica, S.A., 981 F.2d 1, 7 (1st Cir.1992); Trinidad & Tobago, 848 F.2d at 1156, and to a certain degree the D.C. Circuit. See Crown Prosecution, 870 F.2d at 687, 692-93, & 692 n. 7.
 
 
 20
 We have also previously held, that once a district court is satisfied that statutory requirements are met, the district court's discretion in deciding whether to grant the petition should be guided by the "twin aims" of the statute, namely "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." Malev Hungarian Airlines, 964 F.2d at 100. In the exercise of its discretion, the district court should not attempt to conduct a detailed analysis of foreign law, but should focus primarily on fostering these twin aims. Euromepa I, 51 F.3d at 1099-1100.
 
 III. DISCUSSION
 
 21
 Petitioners argue that the district court erred in failing to consider the pending French Bankruptcy Proceeding, and a potential motion to reopen the judgment of the French Court of Appeal as proper predicate adjudicative proceedings in dismissing the Petition as moot. Petitioners also argue that the district court failed to accord this Court's opinion in Euromepa I due deference, and that the district abused its discretion in failing to promptly rule on the Petition, or at least on the motion to dismiss, following remand from this Court. The application of the above stated principles to this case shows that the Petitioners' arguments must fail, and that the district court was correct in dismissing the Petition as moot because the requirements of the statute were not satisfied, and there was thus no foreign proceeding in which the discovery could be used.
 
 
 22
 As noted above, in determining whether the second element of the Gianoli Aldunate test is met, namely whether "the discovery is for use in a proceeding before a foreign tribunal," 3 F.3d at 58, a court may properly look to foreign law. See Fonseca, 620 F.2d at 323 (analyzing the function of the proceeding under Colombian law); India, 385 F.2d at 1020 (analyzing the nature of the proceeding under Indian law). While it is clear that a bankruptcy proceeding may, in some instances, be an adjudicative proceeding within the meaning of the statute, see Lancaster Factoring Co., 90 F.3d at 42, we hold that the French Bankruptcy Proceeding in this instance is not an adjudicative proceeding within the meaning of the statute for the following reasons. The merits of the dispute between Esmerian and Euromepa have already been adjudicated and will not be considered in the French Bankruptcy Proceeding. As a matter of French law, the judgment of the French Supreme Court acts as res judicata with respect to the merits of the dispute in the French Bankruptcy Proceeding. Thus, in the French Bankruptcy Proceeding, nothing is being adjudicated; the already extant judgment is merely being enforced (to the extent permitted by the assets of the bankruptcy estate).[2]
 
 
 23
 Petitioners' second contention, that the potential reopening of the French Court of Appeal action by a motion based on newly discovered evidence constitutes a "proceeding" under the statute, is meritless. Brazil clearly holds that a proceeding must be "imminent--very likely to occur and very soon to occur" in order to satisfy the statutory requirements. 936 F.2d at 706. In this case, as conceded by Petitioners, such a motion to reopen will not even be made, let alone granted, absent newly discovered evidence. The motion to reopen is thus neither very likely to occur nor very soon to occur. Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation. The motion to reopen the proceedings in the French Court of Appeal thus cannot serve as a predicate foreign proceeding for the Petition.
 
 
 24
 Accordingly, because neither the French Bankruptcy Proceeding nor the potential motion to reopen may properly be considered as the predicate foreign action, the district court was correct in dismissing the Petition as moot because at that time there were no foreign proceedings, within the meaning of the statute, in which the discovery could be used.
 
 
 25
 We also find that the district court's treatment of the Petition on remand was not inconsistent with this Court's prior opinion and this Court's subsequent order denying Esmerian's motion to withdraw that opinion, which expressly stated that the denial of the motion to withdraw was "without prejudice to any consideration of intervening developments by the district court."
 
 
 26
 After this Court remanded the Petition to the district court, and up until the time the district court issued its endorsement order, Petitioners' appeal in the French Supreme Court was pending. If that appeal could have provided the predicate foreign action for the Petition, thus providing a live controversy, then Petitioners' argument that the district court abused its discretion and ignored this Court's mandate in failing to act during the pendency of that appeal might have some merit. However, because that appeal again fails to meet the second element of the Gianoli Aldunate test--"that the discovery be for use in a proceeding before a foreign tribunal," 3 F.3d at 58--Petitioners' argument fails.
 
 
 27
 Taking the language of Gianoli Aldunate, and the statute, on its face, the discovery certainly could not be "for use in" the French Supreme Court appeal if that court does not take and hear new evidence. Again, given Fonseca and India, an analysis of French law on this point is appropriate, and the affidavits and other material submitted by the parties show that the French Supreme Court does not, in fact, take and hear new evidence. Although we have never explicitly considered the "for use in" language in this manner, in the factual recitation of Euromepa I, we expressly noted that the French Court of Appeal would hear and consider new evidence, clearly implying that this is a proper consideration. 51 F.3d at 1097.
 
 
 28
 Accordingly, the district court did not abuse its discretion in failing to rule on the Petition or on the motion to dismiss, during the pendency of the French Supreme Court action because during that time the statutory requirements were not met, and the Petition was thus moot. As a practical matter, the district court's inaction amounted to a stay of the Petition pending the decision of the French Supreme Court. This inaction in no way harmed, and arguably benefitted, the Petitioners because the district court could have dismissed the Petition as moot at any time. By waiting for the judgment of the French Supreme Court, the district court assured that if that court reversed the French Court of Appeal and remanded the case, thus providing a proceeding in which the discovery could be used, the Petitioners would not have to refile the Petition. This inaction was not inconsistent with our directives, and did not amount to an abuse of discretion.
 
 IV. CONCLUSION
 
 29
 For the foregoing reasons, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Harlington Wood, Jr., Senior Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Intermediate courts of appeal in France take and hear new evidence. See Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1097 (2d Cir.1995)
 
 
 [2]
 We make this determination under Fed.R.Civ.P. 44.1, and we may consider "any relevant source," including the affidavits submitted by the parties. See Seetransport Wiking Trader Schiffahrtsgesellschaft MBH & Co., Kommanditgesell-Schaft v. Navimpex Centrala Navala, 29 F.3d 79, 81 (2d Cir.1994). We note that in so doing, we are not required to take all allegations of French law proffered by Petitioners to be true as they contend. Questions of foreign law are nonetheless questions of law, and not of fact