**In re Application of Jurema Dimas de Melo PIMENTA and Dimas de Melo Pimenta Filho Pursuant to 28 U.S.C. § 1782 For Judicial Assistance in Obtaining Evidence in This District.**

No. 12–24043–MC.

United States District Court, S.D. Florida.

April 17, 2013.

Edward H. Davis, Jr., Rodrigo Sebastian Da Silva, Astigarraga Davis, Miami, FL, for Jurema Dimas De Melo Pimenta.

Kristin Drecktrah, Rodney Quinn Smith, II, Smith International Legal Consultants PA, Miami, FL, for Dimas De Melo Pimenta Filho.

### *ORDER*

CECILIA M. ALTONAGA, District Judge.

**THIS CAUSE** came before the Court on Movants, Guiomar Ferreira Dimas de Melo Pimenta ("Guiomar" or "Decedent's Widow") and Josué Dimas de Melo Pimenta's ("Josué['s]") (collectively, "Movants[']") Motion to Quash Subpoenas ("Motion")

[ECF No. 9], filed on December 6, 2012; and Movants' Status Report ("Status Report") [ECF No. 31], filed on March 21, 2013. The Court has carefully considered the parties' written submissions, oral arguments presented at a hearing held on January 23, 2013 ("January 23 Hearing") [ECF No. 25], and applicable law.

## I. BACKGROUND

This matter involves a dispute over a will probated in São Paulo, Brazil. On November 8, 2012, Applicants, Jurema Dimas de Melo Pimenta and Dimas de Melo Pimenta Filho (collectively, "Applicants"), filed an Ex Parte Application for Discovery Pursuant to 28 U.S.C. section 1782 ... ("the Application") seeking an Order compelling discovery from Ocean Bank; Israel Discount Bank; and Haydee A. Ceballos and/or Suarez, Ceballo & Ortiz (collectively, "Discovery Targets"). (*See generally* Appl. [ECF No. 1]). Applicants assert they need the requested discovery to contest the will in Brazil.

The will at issue belonged to Dimas de Melo Pimenta ("Decedent") who passed away at the age of seventy-eight on September 5, 1996. (*See id.* 1). Applicants are Decedent's children from his first marriage. (*See id.* 2). Movants are Decedent's Widow, Guiomar, and one of the two children from Decedent's marriage to Guiomar. (*See id.* 1–2). After Decedent's death, a will contest ensued before the 7th Court of Family and Successions of the Central Courthouse of São Paulo, Brazil ("Brazilian Probate Court"). (*See id.* 2). Ultimately, the parties entered into a settlement agreement ("the Settlement Agreement") on September 21, 2000. (*See id.*).

The Settlement Agreement distributed the property left by Decedent between Decedent's Widow, his legitimate children and heirs, and certain devisees appointed in the will. (*See* Appl. Ex. A 3 [ECF No. 1–1]). At issue in the present dispute is Clause 34 of the Settlement Agreement, which provides, "In the event that any inheritance property has been concealed by the heirs ... or by a third party and its existence is later verified, said property shall be the purpose of a secondary estate distribution among the four (4) heirs mentioned in the above clause." (*Id.* 49). Clause 33 stipulates the four heirs are Decedent's legitimate children, including Applicants, and "[t]he parties mutually agree to jointly sign ... all letters needed to open and verify any bank accounts in Brazil and abroad in the event that any heir believes that there is or there was an account being kept in the name of the deceased or his Estate." (*Id.*).

The Application contends "Applicants have a reasonable foundation to believe that [Decedent's Widow] concealed substantial assets belonging to Decedent's Estate with the assistance and/or knowledge of other parties, including but not limited to Emanuel[, Decedent's other child with Guiomar,] and Josué." (Appl. 2). "Specifically, [Decedent] and many of the legal entities he beneficially owned maintained bank accounts and/or safety deposit boxes with branches of Ocean Bank and Israel Discount Bank and perhaps other banks in the Southern District of Florida." (*Id.* 2–3). Applicants provide exhibits indicating a relationship between Decedent and the two named banks. (*See id.* 3).

Applicants additionally assert a legal interest in nine local industrial warehouses which were formerly owned directly or indirectly by Decedent and leased to third parties. (*See id.* 3). Particularly, Applicants declare an interest in any rents paid by tenants prior to Decedent's death as well as his transfer of the warehouses to himself and Guiomar as a tenancy by the entirety. (*See id.* 3–4). Applicants contend the aforementioned accounts and

warehouses (and rents collected from such warehouses) may have been concealed during the original settlement discussion. (*See id.* 2–3). Applicants further represent Haydee A. Ceballos ("Ceballos")—a Certified Public Accountant with the accounting firm Suarez, Ceballos and Ortiz—managed the financial affairs of Decedent and his entities in the United States, including the warehouses. (*See id.* 4). In addition, Ceballos served as the registered agent and mailing contact for many of Decedent's entities, entities often established to manage the warehouses, including Goldstron, Inc. ("Goldstron") and Omegahouses Limited ("Omegahouses"). (*See id.*). Goldstron and Omegahouses were not disclosed as assets to be distributed prior to entering into the Settlement Agreement. (*See* Josué Decl. [ECF No. 11]).

In light of Applicants' representations, Applicants request document production from Israel Discount Bank and Ocean Bank, and document production and depositions from Haydee A. Ceballos and/or Suarez, Ceballos & Ortiz. (*See id.* 5–8). The Application represents each person or entity is found in this District. (*See id.* 1). Applicants further seek leave to file Notice(s) of Intent to Serve Subpoena(s) on any other parties found within this District having additional documents or testimony related to purportedly concealed assets formerly belonging to Decedent. (*See id.* 8). On the same day the Application was filed, the Court issued an Order [ECF No. 6] granting the Application and authorizing Applicants to issue and serve the requested subpoenas.

Nearly a month later, on December 6, 2012, Movants filed an Emergency Motion to Stay Compliance with Subpoenas ("Motion to Stay") [ECF No. 8] and the instant Motion. Movants requested the Court stay the previously authorized subpoenas until it resolved the Motion. (*See* Mot. to Stay 1). The Court granted the Motion to Stay, abating compliance with all subpoenas pending further order of the Court. (*See* Dec. 7, 2012 Order [ECF No. 12]). Applicants subsequently filed a Response in Opposition to Motion to Quash ... ("Response") [ECF No. 14], to which Movants replied ("Reply") [ECF No. 17]. Applicants additionally filed a Sur–Reply in Response to the Reply ... ("Sur–Reply") [ECF No. 18–1] with permission from the Court. (*See* Jan. 10, 2013 Order [ECF No. 19]).

After holding a hearing (*see* Jan. 23 Hr'g), and terming the Motion (*see* Jan. 23, 2013 Order [ECF No. 26]), the Court entered an Order ("January 29 Order") [ECF No. 28] providing:

1. Movants shall have until March 23, 2013 to obtain a ruling or guidance from the [Brazilian Probate Court] regarding the discovery sought in the above-styled action.

2. The subpoena recipients—Ocean Bank, Israel Discount Bank, Haydee Ceballos and the accounting firm, Ceballos & Ortiz—are hereby directed to turn over all documents responsive to the subpoenas into the custody of the Court. The Court will hold those documents *in custodia legis* until March 23, 2013. Upon receiving a ruling or guidance from the foreign tribunal, the parties shall file a Notice with the Court indicating the tribunal's determination and the parties' proposed instructions for releasing or returning the documents.

(Jan. 29 Order (footnote omitted)).

Shortly before the expiration of the Court's deadline, on March 21, 2013, Movants filed a Status Report. (*See generally* Status Report). The Court ordered Applicants to file a response to the Status Report (*see* Mar. 22, 2013 Order [ECF No. 32]), which Applicants filed on March 28,

2013 ("Response to Status Report") (*see* [ECF No. 33]).

## II. ANALYSIS

Applicants seek discovery from the Discovery Targets relating to Decedent and any entity that he beneficially owned, including but not limited to the fifteen additional entities identified in the Application. In the Status Report, Movants agree to withdraw the Motion with respect to fourteen of the sixteen objects from which discovery is sought, but reassert their objections as to Omegahouses and Goldstron. (*See* Status Report ¶ 7). In support, Movants contend Omegahouses and Goldstron "had nothing to do with probate proceedings, were not mentioned in the parties' probate settlement and involve the personal financial matters and investments of the Movants regarding various Florida properties that, at best for Applicants, were relinquished in the parties' settlement."[1] (*Id.* ¶ 8). Movants further maintain discovery under this statute should not be used to reopen proceedings, and speculation about a possible future action is simply not enough. (*See id.* ¶ 9). Finally, Movants assert the limitations period already expired on any potential claim. (*See id.* ¶ 10).

According to Applicants, Movants failed to comply with the January 29 Order as they did not seek guidance from the Brazilian Probate Court. . (*See* Resp. to Status Report ¶¶ 6–9). Applicants maintain their "file" has been reactivated with the Brazilian Probate Court (*id.* ¶ 3; *see also id.* ¶ 9 ("Judge Campos Refosco has not stopped the proceedings in Brazil, even though she has been fully apprised of the dispute.")), and any further issues of Brazilian law should be reserved for the Brazilian Probate Court (*see id.* ¶ 9).

The applicable statute, 28 U.S.C. section 1782 ("Section 1782") provides, "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247, 124 S.Ct. 2466, 159 L.Ed.2d 355 (2004). A district court has the authority to grant such an application for judicial assistance if the following requirements are met:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir.2007) (footnote call numbers omitted) (quoting 28 U.S.C. § 1782(a)). If the aforementioned requirements are met then Section 1782 authorizes, but does not require, the Court to provide assistance. *See id.* at 1332 (quoting *Intel*, 542 U.S. at 255, 124 S.Ct. 2466). Here, Movants solely dispute the third requirement that the dis-

---

1. The Court does not address this first argument other than to note the Applicants contend assets were improperly concealed from them during the original distribution of Decedent's estate. Therefore, it is axiomatic that the Discovery Targets would not have been part of the Settlement Agreement.

covery is sought for use in a proceeding in a foreign tribunal.

██ "[T]he Supreme Court has recognized the 'broad range of discovery' authorized under [Section] 1782 and has held that [Section] 1782 is not limited to proceedings that are pending or imminent." *Id.* at 1333 (footnote call number and citation omitted) (quoting *Intel,* 542 U.S. at 259, 124 S.Ct. 2466). "Rather, the proceeding for which discovery is sought need only be 'within reasonable contemplation.' " *Id.* (quoting *Intel,* 542 U.S. at 259, 124 S.Ct. 2466). In the present case, Applicants demonstrate the proceeding for which discovery is sought—a secondary estate distribution—is within reasonable contemplation. The parties' Settlement Agreement specifically contemplates a second proceeding in the event some inheritance property "has been concealed." (Appl. Ex. A 49). Indeed, Clause 33 of the Settlement Agreement stipulates the parties "mutually agree to jointly sign . . . all letters needed to open and verify any bank accounts in Brazil and abroad in the event that any heir believes that there is or there was an account being kept in the name of the deceased or his Estate." (*Id.*). Moreover, Applicants represent they have reactivated the case file with the Brazilian Probate Court. (*See* Resp. to Status Report ¶¶ 3, 9).

Movants nevertheless maintain Section 1782 may not be used to reopen proceedings already completed. (*See* Status Report ¶ 9 (citing *Euromepa, S.A. v. R. Esmerian, Inc.,* 154 F.3d 24, 29 (2d Cir. 1998)); Reply 6–7). In *Euromepa,* the court held a motion to reopen already completed foreign litigation "cannot serve as a predicate foreign proceeding" under Section 1782. 154 F.3d at 29. The applicants in *Euromepa* had already litigated the dispute, including two appeals, and the decision had been affirmed by the French Supreme Court. *See id.* at 26. As a

result of an earlier adverse ruling by the intermediate court of appeals, the applicants filed a petition seeking bankruptcy protection. *See id.* The applicants also indicated they might file a motion to reopen the judgment of the intermediate court of appeals based on newly discovered evidence they intended to procure through Section 1782. *See id.* at 29. The Second Circuit upheld the district court's denial of the application as the proceeding was not imminent—meaning, it was neither very likely to occur nor very soon to occur. *See id.* As the motion to reopen was contingent on the newly discovered evidence, the court's denial of the application was appropriate given that Section 1782 "is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation." *Id.*

The present case is distinguishable from *Euromepa* as the Settlement Agreement did not foreclose the litigation, but rather specifically contemplated a secondary proceeding in certain instances. Moreover, *Euromepa* was decided before *Intel* and under a heightened standard placed upon Section 1782 applicants that is no longer valid. *See Intel,* 542 U.S. at 259, 124 S.Ct. 2466 ("In short, we reject the view . . . that [Section] 1782 comes into play only when adjudicative proceedings are 'pending' or 'imminent[;]' [i]nstead, we hold that [Section] 1782(a) requires only that a dispositive ruling . . . be within reasonable contemplation." (citations omitted)).

Similarly, in *In re Intel Corp. Microprocessor Antitrust Litigation,* another case cited by Movants in their Status Report, the action was not within reasonable contemplation as it was grounded on the applicant's "own subjective wish to bring some action against Intel, somewhere, on behalf of unknown persons, at some unknown future time." MDL No. 05–1717–

JJF, 2008 WL 4861544, at *15 (D.Del. Nov. 7, 2008). Here, Applicants are not seeking information "on the off chance or undocumented assertion that someday, somewhere a judicial proceeding against or on behalf of persons/entities yet unknown may follow," nor are they requesting information for "fishing expeditions or harassment." *Id.* at *11 (citing *In re Letter of Request from Crown Prosecution Service of U.K.,* 870 F.2d 686, 691 (D.C.Cir.1989)). Rather, the specific parties involved and the relief sought in the anticipated litigation are limited to the express provisions of the Settlement Agreement. Consequently, a proceeding is within reasonable contemplation, and the third statutory requirement under Section 1782 is satisfied.

 As Applicants have satisfied the four elements under Section 1782, the Court is authorized, but not required, to provide assistance. In deciding whether to exercise its discretion and provide assistance, the Court can consider the following additional factors:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because "the need for [Section] 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the [Section] 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the request is otherwise "unduly intrusive or burdensome."

*In re Clerici,* 481 F.3d at 1334 (quoting *Intel,* 542 U.S. at 264–65, 124 S.Ct. 2466). Additionally:

> once a district court is satisfied that statutory requirements are met, the district court's discretion in deciding whether to grant the petition should be guided by the twin aims of the statute, namely providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.

*Euromepa,* 154 F.3d at 28 (citation and internal quotation marks omitted). "Congress has given the district courts ... broad discretion in granting judicial assistance," and any review of the Court's determination is "extremely limited and highly deferential." *In re Clerici,* 481 F.3d at 1331 (quoting *United Kingdom v. United States,* 238 F.3d 1312, 1319 (11th Cir.2001)) (internal quotation marks omitted). Moreover, unduly intrusive or burdensome requests may be rejected or trimmed by the Court. *See id.* at 1334 (quoting *Intel,* 542 U.S. at 265, 124 S.Ct. 2466).

The Movants fail to expressly address any of these additional factors, but the Court will nonetheless discuss each in turn. Beginning with the first factor, the Discovery Targets would not be participants in the foreign proceeding—weighing in favor of granting the Petition—which renders the need for the assistance of the Court more readily apparent. *See In re Chevron Corp.,* No. 11–24599–cv, 2012 WL 3636925, at *11 (S.D.Fla. June 12, 2012) (citing *Intel,* 542 U.S. at 264, 124 S.Ct. 2466).

Next, there is nothing in the record suggesting the Brazilian Probate Court would be unreceptive to the Application. As stated, Applicants represent the Brazilian Probate Court is aware of the Section 1782 matter and has not raised any objection. (*See* Resp. to Status Report ¶¶ 3, 9).

Hence, this second factor is neutral in the Court's determination.

Although not expressly directed at the third factor, Movants argue granting the Motion is appropriate as the Brazilian Probate Court does not have jurisdiction over the relevant assets, and the limitations period applicable to this claim already expired. (*See* Status Report ¶ 10; Reply 7–9). The parties each employed the assistance of Brazilian lawyers to support their contrary positions on this issue, and provided the attorneys' conflicting declarations. (*Compare* Appl. Ex. F ¶ 8 [ECF No. 1–6] ("Upon and [sic] information and belief, there is no Brazilian law, rule of evidence or rule of civil or criminal procedure prohibiting the filing of the Application or the requests made in it."), *with* Status Report Ex. A ¶ 7 ("Thus, the limitation period for the hidden assets action ended on September 21, 2010. No such action by his heirs or creditors can be accepted after that date.")). As such, neither party's explanation is conclusive, nor do the parties provide further clarity about the direction of future proceedings. The Court granted the parties time to seek guidance or a ruling from the Brazilian Probate Court, but Movants' Status Report suggests none was sought. (*See generally* Status Report).

■ The Court will not attempt to conduct a detailed analysis of foreign law, but rather focuses primarily on fostering the twin aims of the statute: providing an efficient means of assistance to participants in international litigation and encouraging foreign countries to provide reciprocal assistance to our courts. *See Euromepa*, 154 F.3d at 28 (citation omitted); *cf. In re Request For Judicial Assistance from Seoul Dist. Criminal Ct., Seoul, Korea*, 555 F.2d 720, 723–24 (9th Cir.1977) ("[O]ur federal courts, in responding to requests, should not feel obliged to involve themselves in technical questions of foreign law relating to subject-matter jurisdiction of foreign or international tribunals, or the admissibility before such tribunals of the testimony or material sought. This is not to say that jurisdiction of the requesting court is never an appropriate inquiry. If departures from our concepts of fundamental due process and fairness are involved, a different question is presented ...." (citation omitted)). Here, granting Applicants' request serves to support the twin aims of the statute, and the third factor does not present any impediment to the Application.

■ Finally, the Court considers whether the request is otherwise unduly intrusive or burdensome. The information produced is not unduly intrusive as the parties' Settlement Agreement already contemplated this sort of assistance. As stated, in Clause 33 of the Settlement Agreement the parties "agree[d] to jointly sign ... all letters needed to open and verify any bank accounts in Brazil *and abroad* in the event that any heir *believes* that there is or there was an account being kept in the name of the deceased or his Estate." (Appl. Ex. A 49 (emphasis added)). Thus, the parties envisioned this precise scenario and mutually agreed to facilitate such a request. Applicants seek discovery in this District from two banks in which Decedent or his entities had accounts, and from Decedent's accountant about the Decedent and his entities' financial transactions. In accordance with Clause 33, the Applicants assert a good faith belief that concealed assets will be discovered in the records of the Discovery Targets. Furthermore, the request is not unduly burdensome. The undersigned has already received the document production sought in the Application, so any perceived burden has already been borne and this fourth factor does not counsel against

granting the Application. In sum, the four discretionary factors all weigh in favor of denying the Motion.[2]

### III. CONCLUSION

Accordingly, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motion [ECF No. 9] is **DENIED.**

2. The stay of the November 8, 2012 Order [ECF No. 6] is **SET ASIDE.**

3. The materials produced to the Court pursuant to 28 U.S.C. Section 1782 are available to Applicants, Jurema Dimas de Melo Pimenta and Dimas de Melo Pimenta Filho.

4. Upon retrieving the documents, Applicants shall provide copies of the discovery to Movants, Guiomar Ferreira Dimas de Melo Pimenta and Josué Dimas de Melo Pimenta, at the Movants' expense.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of April, 2013.

---

2. Movants previously argued the scope of the Application was generally too burdensome and violated various privileges (*see* Reply 10); however, Movants did not renew this argument in the Status Report (*see generally* Status Report). Moreover, "the existence of privilege cannot be determined from a blanket assertion of privilege over a large amount of material, as is the assertion of privilege to any bit of information that relates to [a] bank account[ ]. 'Blanket assertions of privilege before a district court are usually unaccepta-

ble.' " *United States v. McQuillan*, No. 93–134–Misc–T–23A, 1994 WL 692851, at *2 (M.D.Fla. Dec. 12, 1994) (quoting *United States v. Davis*, 636 F.2d 1028 (5th Cir.1981)); *see also Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08–21085–civ, 2008 WL 4327253, at *1 (S.D.Fla. Sept. 18, 2008) ("[A] blanket claim of privilege is insufficient."). Thus, even if the Movants had not waived their argument, the Court cannot appropriately rule on Movants' blanket assertion and declines to do so.