**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ILYAS KHRAPUNOV,
  *Plaintiff-Appellee*,

v.

PAVEL PROSYANKIN; JOHN DOE,
  *Objectors-Appellants.*

No. 18-16254

D.C. No.
4:17-mc-80107-
HSG

OPINION

Appeal from the United States District Court
for the Northern District of California
Haywood S. Gilliam, Jr., District Judge, Presiding

Argued and Submitted December 20, 2018
San Francisco, California

Filed July 24, 2019

Before: Consuelo M. Callahan, N. Randy Smith,
and Mary H. Murguia, Circuit Judges.

Opinion by Judge Murguia;
Concurrence by Judge N.R. Smith;
Partial Concurrence and Partial Dissent by Judge Callahan

# SUMMARY[*]

## Discovery

The panel vacated the district court's grant of an application under 28 U.S.C. § 1782 for discovery of evidence for use in a foreign tribunal and remanded for further proceedings.

The district court denied objectors relief from a magistrate judge's order granting plaintiff's application for issuance of a subpoena to Google, Inc., compelling the disclosure of certain subscriber information in the company's possession. That information, plaintiff claimed, would aid his attempt to discharge two court orders issued against him in ongoing litigation in England. In the English proceeding, a Kazakhstan bank, alleging that it had been defrauded, had obtained a worldwide asset freeze order and cross-examination order against plaintiff.

English courts subsequently denied plaintiff's attempts to discharge the two orders. The panel concluded that these developments in the English litigation called into doubt the statutory requirement of § 1782 that the discovery be for use in a foreign "proceeding." The panel therefore vacated the district court's judgment and remanded for further proceedings.

Concurring in the judgment and dissenting, Judge Callahan wrote that the action was not moot, and she would

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

hold that a ruling resolving objections to a subpoena issued under § 1782 is dispositive, and thus, absent consent by the parties to a magistrate judge having general jurisdiction, such a matter must be determined de novo by a district court judge.

Concurring, Judge N.R. Smith wrote that the dissent was an advisory opinion.

## COUNSEL

Michael L. Freedman (argued), Cara E. Trapani, and Jeffrey L. Bornstein, Rosen Bien Galvan & Grunfeld LLP, San Francisco, California, for Objectors-Appellants.

Matthew C. Dirkes (argued) and Martha Boersch, Boersch Shapiro LLP, Oakland, California, for Plaintiff-Appellee.

## OPINION

MURGUIA, Circuit Judge:

28 U.S.C. § 1782 authorizes, but does not require, federal district courts to assist in the production of evidence for use in a foreign or international tribunal. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004). Here, the district court granted Plaintiff-Appellee Ilyas Khrapunov's application for discovery under § 1782. However, the factual circumstances surrounding Khrapunov's application have changed dramatically during the pendency of this appeal. We therefore vacate the decision below and remand to the district court to consider, in the first instance, whether the statutory requirements for discovery

under § 1782 remain satisfied and whether, as a matter of the district court's discretion, discovery remains appropriate.

## I.

Khrapunov filed a § 1782 application in federal district court, seeking issuance of a subpoena to Google, Inc., compelling the disclosure of certain subscriber information in the company's possession. That information, Khrapunov claimed, would aid his attempt to discharge two court orders issued against him in ongoing litigation in England.

The proceedings in England stem from Khrapunov's alleged role in the misappropriation of billions of dollars from JSC BTA Bank, a major bank in Kazakhstan. The bank alleges that, with Khrapunov's assistance, the bank's prior chairman, Mukhtar Ablyazov, defrauded it of nearly $6 billion.

The bank obtained two court orders in the English litigation relevant to this appeal: an order imposing a worldwide freeze of Khrapunov's assets, and an order permitting the bank's attorneys to cross-examine Khrapunov concerning his assets. Khrapunov filed separate applications in the English litigation to discharge the worldwide freeze order and the cross-examination order.

In August 2017, Khrapunov filed his § 1782 application in the Northern District of California, requesting that a subpoena issue to Google. The application was assigned to a magistrate judge who granted the application, and the subpoena issued.

Appellants-Objectors Pavel Prosyankin and John Doe[1] moved to quash the subpoena. The magistrate judge declined to quash the subpoena in its entirety but did narrow its scope somewhat. Objectors then sought review by the district court. The district court denied relief, and Objectors appealed.

While these matters were pending in district court and on appeal, the proceedings in England continued.[2] According to a supplemental declaration provided by Objectors on appeal, in February and May 2018, Khrapunov's attempts to discharge the two court orders against him—the asset freeze order and the cross-examination order—were denied by English courts. Khrapunov was not given permission to appeal those denials, and at least one judge found Khrapunov's arguments to be "totally without merit." According to Objectors, this means Khrapunov's discharge applications have "been finally determined against him, and Mr. Khrapunov cannot appeal or pursue them any further." Khrapunov does not dispute that the discharge applications have been finally decided and that his request to appeal has been denied. Instead, he argues that he retains the ability to reopen those proceedings if he discovers new evidence—like the subscriber information he seeks from Google.

Objectors argue that the English courts' final, nonappealable denials of Khrapunov's applications render

---

[1] The magistrate judge allowed Doe, a user of one of the subpoenaed Gmail accounts, to proceed using a pseudonym based on Doe's stated concern for his safety.

[2] Both Khrapunov and Objectors moved to supplement the record on appeal with the decisions of the English courts and declarations describing the consequences of those decisions for this case. We grant these motions as well as Objectors' related request for judicial notice.

this case moot. Alternatively, Objectors argue that the district court applied the incorrect standard in reviewing the magistrate judge's decision and that the district court abused its discretion by failing to properly weigh the relevant factors when considering whether to grant the application under § 1782.

## II.

We have jurisdiction under 28 U.S.C. § 1291. *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 567 (9th Cir. 2011). We review the district court's decision under § 1782 for abuse of discretion. *Four Pillars Enters. Co., Ltd. v. Avery Dennison Corp.*, 308 F.3d 1075, 1078 (9th Cir. 2002).

## III.

Section 1782 provides:

> [t]he district court of the district in which a person resides or is found may order him to . . . produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person[.]

28 U.S.C. § 1782(a). Section 1782's statutory language has been distilled to permit district courts to authorize discovery where three general requirements are satisfied: (1) the person from whom the discovery is sought "resides or is found" in the district of the district court where the application is made; (2) the discovery is "for use in a proceeding in a foreign or international tribunal"; and (3) the application is made by a foreign or international tribunal or "any interested person."

*See* 28 U.S.C. § 1782(a); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012); *In re Clerici*, 481 F.3d 1324, 1331–32 (11th Cir. 2007).

In this case, the second statutory requirement—that the discovery be for use in a foreign "proceeding"—is called into doubt by the developments in the English litigation. In *Intel*, the Supreme Court explained that a foreign proceeding need not be "pending" or even "imminent" when the discovery is sought. 542 U.S. at 258–59. So long as a future proceeding is "within reasonable contemplation," it satisfies the statute's requirement. *Id*. at 259. *Intel*, however, did not address the situation here: where the "proceeding" for which the discovery was initially sought has concluded.

In a case decided before *Intel*, the Second Circuit addressed—in a situation almost identical to that present here—whether the possibility of reopening an already completed foreign proceeding could satisfy § 1782's requirement. *See Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998). That court concluded that the possibility of reopening proceedings could not satisfy § 1782, holding:

> Section 1782 is designed to provide discovery in aid of foreign litigation, not to provide discovery to justify the reopening of already completed foreign litigation. The motion to reopen the proceedings in the French Court of Appeal thus cannot serve as a predicate foreign proceeding for the Petition.

*Id.*

Although the *Euromepa* decision cited the "imminence" standard the Supreme Court rejected in *Intel*, *see id*., we are nevertheless convinced that *Euromepa* would come out the same way under *Intel*'s "reasonable contemplation" standard. Although § 1782 authorizes discovery in a "broad range" of circumstances, *Intel*, 542 U.S. at 259, those circumstances are not without *some* limit. *Cf. id.* ("[W]e hold that § 1782(a) requires only that a *dispositive ruling* by the Commission, *reviewable* by the European courts, be within reasonable contemplation.") (emphasis added). As a general matter, the mere possibility that discovery might permit already concluded foreign proceedings to be reopened likely approaches that limit.

We have recognized that district courts "are in the best position to review the details of a § 1782 request and to determine whether judicial assistance is justified." *Four Pillars*, 308 F.3d at 1080 (alteration incorporated). In this case, in light of the developments in the English litigation, we conclude that some additional fact-finding about the nature of the English "proceeding" is necessary—about the discovery sought and its relationship to the possibility of reopening the English proceedings; about the standard Khrapunov must satisfy to reopen those proceedings; about the relative likelihood of satisfying that standard; and about whether the discovery sought will actually assist Khrapunov in satisfying that standard. We leave to the district court to determine, in light of these facts, whether the statutory requirements of § 1782 remain satisfied.

Additionally, even where an applicant satisfies § 1782's statutory prerequisites, the district court still retains substantial discretion to permit or deny the requested discovery. *Intel*, 542 U.S. at 264–65. The developments in the English litigation are relevant to the discretionary factors

courts consider when evaluating § 1782 applications, as well. *See id.*, 542 U.S. at 264–65. In particular, the English courts' willingness to proceed to judgment without the benefit of the evidence Khrapunov sought,**[3]** and the courts' treatment of Khrapunov's claims (including one judge's conclusion that Khrapunov's position was "totally without merit"), likely bear on both the "character of the proceedings underway abroad" and the "receptivity" of the English courts "to U.S. federal-court judicial assistance." *In re Premises Located at 840 140th Ave.*, 634 F.3d at 563 (quoting *Intel*, 542 U.S. at 264–65). On remand, it may be appropriate for the district court to reevaluate these discretionary factors, as well, in deciding whether discovery remains appropriate in this case.

The dissent suggests our decision will require district courts, in evaluating § 1782 applications, to adjudicate each new procedural development in the foreign case. But not all procedural developments are created equally, and we trust that district court judges will be able to separate the insignificant from the significant, mere delay tactics from events of consequence. After all, "Congress gave the federal district courts broad discretion to determine whether, and to what extent, to honor a request for assistance under 28 U.S.C. § 1782." *Four Pillars*, 308 F.3d at 1078.

---

**[3]** Our dissenting colleague suggests that it is only natural that the English litigation proceeded without the discovery Khrapunov sought. But it is not apparent why that is necessarily so. Khrapunov could have attempted to stay the litigation to allow time for the production of the evidence he sought. And, even if he *did* attempt to stay the litigation but was unsuccessful, the English courts' unwillingness to delay proceedings might suggest that the English courts were not particularly interested in "U.S. federal-court judicial assistance" in the first place. *Intel*, 542 U.S. at 264.

Considering the substantial discretion reserved to the district courts, *see Intel*, 542 U.S. at 264–65, we vacate the district court's order to permit a full exercise of that discretion.

## IV.

Accordingly, the judgment of the district court is **VACATED** and the case is **REMANDED** for further proceedings consistent with this opinion. Each party shall bear its own costs.

---

N.R. SMITH, Circuit Judge, concurring:

The dissent's foray into the orthogonal issue of the Federal Magistrates Act "swings hard at the wrong pitch." *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1942 (2019) (Sotomayor, J., dissenting). The dissent's advisory opinion about an issue of first impression does not directly bear on our resolution and demands no substantive response.

---

CALLAHAN, Circuit Judge, concurring in the judgment and dissenting:

Congress has long authorized "federal district courts to assist in the production of evidence for use in a foreign or international tribunal." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 246 (2004); *see* 28 U.S.C. § 1782. Of course, while an applicant seeks discovery under 28 U.S.C. § 1782, nothing stops the foreign tribunal from proceeding with its own case. The statute's purpose thus is

not only to assist participants in foreign litigation but to "provid[e] *efficient* assistance." *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) (emphasis added), *aff'd*, 542 U.S. 241.

As the applicant under § 1782, appellee, Ilyas Khrapunov, was required to show that he sought discovery for use in an actual proceeding (or one "within reasonable contemplation," *Intel Corp.*, 542 U.S. at 259) in a foreign tribunal. No one—including appellants, Pavel Prosyankin and John Doe (collectively, Objectors), and the majority— disputes that Khrapunov satisfied that requirement. Khrapunov is a party to an ongoing lawsuit in England.

Naturally, during the past two years while the parties have been litigating whether the requested discovery should be allowed, the litigation in England has carried on. Citing further developments in the foreign proceeding, the majority imposes on Khrapunov an ongoing burden of proving the statutory elements for eligibility for discovery at all stages of the case. Not only is there no support in the statute or our case law for imposing such a continuing burden, it's also bad policy. The majority's holding arms would-be discovery targets with a tool for evading discovery under § 1782. By simply forcing re-litigation of discovery eligibility based on the precise procedural posture of the foreign proceeding each time some new development occurs in the foreign case, a would-be discovery target can stall until the foreign proceeding ends.

In addition to undermining the statutory aim of efficiency, the majority's holding foists upon district courts the task of adjudicating the significance of each procedural development in the foreign case. This is contrary to our edict that federal courts resolving § 1782 applications should not "involve themselves in technical questions of foreign law."

*See In re Request For Judicial Assistance From the Seoul Dist. Criminal Court, Seoul, Korea*, 555 F.2d 720, 723 (9th Cir. 1977).

I fear that the majority's decision is likely to accomplish little besides causing further delay. If, upon remand, the magistrate judge again concludes that the statutory elements are still satisfied—which is what I would conclude—the parties would essentially be back to square one without resolution of the questions squarely before us now. I would address the issues raised by the parties, including the question of first impression regarding the Federal Magistrates Act.

In my view, Objectors have not met their heavy burden of showing mootness, and we thus have jurisdiction and should decide this case on the merits. In addressing the merits of the case, I would hold that a ruling resolving objections to a subpoena issued under § 1782 is dispositive, and thus, absent consent by the parties to a magistrate judge having general jurisdiction, such a matter must be determined de novo by a district court judge. The district court here reviewed the magistrate judge's ruling for clear error. Accordingly, although the magistrate judge's analysis of the relevant factors under § 1782 was reasonable, I would vacate and remand for a district judge to determine the matter de novo.

## I.

Objectors assert three grounds for vacating or reversing the district court's decision: (1) the court lacks jurisdiction because the case is moot; (2) the magistrate judge lacked the authority to issue the order denying in part the motion to quash; and (3) relevant considerations weigh against allowing discovery under § 1782.

A.

Objectors argue that recent developments in the English court proceedings have rendered the § 1782 application moot. They argue that the orders issued by the English courts after the magistrate judge's order here have effectively foreclosed Khrapunov's ability to challenge the worldwide asset freeze and cross-examination orders and such a challenge was the only basis offered by Khrapunov for seeking discovery under § 1782. Objectors thus ask us to vacate the orders below and remand with directions to dismiss the action. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). Objectors have not satisfied their burden of showing that this case is moot.

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "There is thus no case or controversy, and a suit becomes moot, 'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "But a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012)). "As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Id.* (quoting *Knox*, 567 U.S. at 307–08). "The party asserting mootness bears a 'heavy' burden; a case is not moot if *any* effective relief may be granted." *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d

1006, 1017 (9th Cir. 2012) (citing *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006)).

As a preliminary matter, Khrapunov argues we should not consider the recent developments in the English court proceedings because the district court did not consider such evidence.   Khrapunov's argument is without merit. Reviewing courts routinely—and often necessarily—consider in the first instance evidence of events occurring after the district court's decision to determine whether the case has become moot.   *See, e.g.*, *Camreta v. Greene*, 563 U.S. 692, 710–11 (2011) (finding mootness when claimant had moved out of state after the grant of certiorari); *Bain v. Cal. Teachers Ass'n*, 891 F.3d 1206, 1214 (9th Cir. 2018) (finding mootness when plaintiffs seeking prospective relief against union policy canceled their union membership); *Akina v. Hawaii*, 835 F.3d 1003, 1010 (9th Cir. 2016) (finding mootness when the challenged election had been canceled, no other ratification elections were scheduled, and the entity pursuing the originally scheduled election had been dissolved).

Indeed, not only is it appropriate for a party to present such extra-record evidence, counsel are duty-bound "to bring to the federal tribunal's attention, '*without delay*,' facts that may raise a question of mootness."   *Arizonans for Official English*, 520 U.S. at 68 n.23 (quoting *Bd. of License Comm'rs of Town of Tiverton v. Pastore*, 469 U.S. 238, 240 (1985)); *see also Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003) ("Consideration of new facts may even be

mandatory, for example, when developments render a controversy moot and thus divest us of jurisdiction.").[1]

In his § 1782 application, Khrapunov stated that the requested subpoena was for use in the English proceedings to support his applications to discharge both the worldwide freeze order and the cross-examination order. The English trial courts denied Khrapunov's discharge applications, and the English Court of Appeal has now denied Khrapunov permission to appeal the two interlocutory orders. Objectors argue that under English law, the English Court of Appeal's orders are final and non-appealable and therefore Khrapunov cannot introduce any additional evidence in the English proceedings.

In my view, Objectors have not met their heavy burden of showing that the case is moot. Objectors overstate the matter when suggesting that Khrapunov has "no ability" to introduce evidence in the English court proceedings. In his declaration, Objectors' English law expert, Anthony Beswetherick, describes his experience in and knowledge of the English court system, identifies the recent court decisions in the English court proceedings, and explains the significance of those decisions. Beswetherick opines that, as a matter of English civil procedure, "Mr. Khrapunov's Discharge Applications have been finally determined against him, and Mr. Khrapunov cannot appeal or pursue them any further." However, Beswetherick also discusses a procedure by which Khrapunov could seek to "reopen" his

---

[1] I join the majority in granting Objectors' motion to take judicial notice of orders issued by the English courts and the parties' respective requests to supplement the record with the declarations of the English barristers who opine on the significance of the recent English court rulings for purposes of our mootness analysis.

request for permission to appeal the denial of his discharge applications. Although Beswetherick characterizes the requirements meriting a reopening of the request as "highly restrictive" and "strictly applied," he acknowledges that the possibility nonetheless remains. A case "becomes moot only when it is *impossible* for a [federal] court to grant any effectual relief." *See Knox*, 567 U.S. at 307 (emphasis added).

Here, the records before us reflect that the litigation in England is ongoing. The federal court could grant effectual relief by ordering the requested discovery. What the foreign tribunal does when presented with those materials is of little consequence to the question of Article III jurisdiction.

Objectors' argument boils down to an assertion that, in light of the final determination of Khrapunov's discharge applications, the requested discovery is no longer "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). But this argument conflates a statutory element of a § 1782 application and constitutional considerations of mootness. Though perhaps they overlap, the two issues are not the same. In determining whether the case is moot, we do not simply analyze whether Khrapunov can still satisfy the statutory prerequisites for discovery under § 1782. "Mootness can be characterized as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Cook Inlet Treaty Tribes v. Shalala*, 166 F.3d 986, 989 (9th Cir. 1999) (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)). To have standing, a plaintiff need not establish every element of a claim. "The essence of the standing question, in its constitutional dimension, is whether the plaintiff has alleged such a

personal stake in the outcome of the controversy [as] to warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Or. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1108 (9th Cir. 2003) (alteration in original) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260–61 (1977)). Despite the seemingly low likelihood of success of Khrapunov's anticipated efforts to make use of the sought-for discovery in the English court proceedings, the status of those proceedings—at least as reflected in the records before this court—has not eliminated Khrapunov's personal stake such that he no longer has standing to pursue his § 1782 application.

Even if the mootness analysis were to turn on whether Khrapunov can continue to satisfy the elements for eligibility for discovery under § 1782, as Objectors argue, Objectors rely on cases that applied a now-rejected standard for showing that the discovery sought is "for use in a proceeding in a foreign or international tribunal." *See* 28 U.S.C. § 1782(a). Objectors—and the majority—rely on two Second Circuit decisions that required a strict showing that the foreign proceeding is "pending" or "imminent." *See In re Ishihara Chem. Co.*, 251 F.3d 120, 125–26 (2d Cir. 2001); *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24, 29 (2d Cir. 1998). But the Supreme Court in *Intel* rejected that standard, holding instead that adjudicative proceedings need to be only "within reasonable contemplation." *Intel*, 542 U.S. at 259; *see id.* ("In short, we reject the view, expressed in *In re Ishihara Chemical Co.*, that § 1782 comes

into play only when adjudicative proceedings are 'pending' or 'imminent.'").[2]

Because Objectors have not met their "heavy" burden of showing mootness, I would hold that we are not deprived of jurisdiction. *See Karuk Tribe of Cal.*, 681 F.3d at 1017. I thus proceed by offering my view on the merits of the appeal.

## B.

Objectors argue that magistrate judges are not authorized to decide a motion to quash a subpoena issued under § 1782 because such matters are "dispositive" within the meaning of the Federal Magistrates Act and Federal Rule of Civil Procedure 72. If Objectors are correct, the magistrate judge lacked the authority to decide Objectors' motion to quash and the district court erred by reviewing the magistrate judge's "decision" for clear error rather than determining the matter de novo. I agree with Objectors.

"The power of federal magistrate judges is limited by 28 U.S.C. § 636." *Mitchell v. Valenzuela*, 791 F.3d 1166, 1168 (9th Cir. 2015) (quoting *Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 658 (9th Cir. 1993)). That statute "provides that certain matters (for example, non-dispositive pretrial matters) may be referred to a magistrate judge for decision, while certain other matters (such as case-

---

[2] There may be another barrier to Objectors meeting their heavy burden of showing mootness: the underlying litigation in England is ongoing. Even if Khrapunov's applications to discharge the worldwide freeze order and the cross-examination order have been finally decided, those decisions did not terminate the proceedings against Khrapunov. Because the litigation in England involving Khrapunov is ongoing, this case is distinguishable from the two Second Circuit cases the Supreme Court overruled in *Intel*.

dispositive motions, petitions for writs of habeas corpus) may be referred only for evidentiary hearing, proposed findings, and recommendations." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1118 (9th Cir. 2003) (en banc) (footnotes omitted).

Federal Rule of Civil Procedure 72, which implements § 636(b)(1), distinguishes between "dispositive" and "[n]ondispositive" matters. Under the rule, a magistrate judge may "hear and decide" "a pretrial matter not dispositive of a party's claim or defense," and such a decision may be set aside by the district court only if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). For a dispositive matter, however, a magistrate judge may issue only "a recommended disposition, including, if appropriate, proposed findings of fact." Fed. R. Civ. P. 72(b). Upon a challenge to the recommended disposition, the district court "must determine de novo" whether to adopt the magistrate judge's recommendation. *Id.*

Section 636(b)(1)(A) provides a list of matters that may not be heard and determined by a magistrate judge. "The matters listed in 28 U.S.C. § 636(b)(1)(A) are dispositive while, *in general*, other matters are non-dispositive." *Flam v. Flam*, 788 F.3d 1043, 1046 (9th Cir. 2015) (citing Fed. R. Civ. P. 72). Although the list in "§ 636(b)(1)(A) appears to be exhaustive," in light of Supreme Court precedent expanding the list of dispositive matters, "we have adopted a functional approach" to determining whether a matter is dispositive. *Id.*; *see also Mitchell*, 791 F.3d at 1168 ("Dispositive matters are those listed in section 636(b)(1)(A), as well as 'analogous' matters."). Under this functional approach, we consider whether the decision on the matter would deny or grant "the ultimate relief sought" in the action or whether the decision would dispose of any

claims or defenses. *SEC v. CMKM Diamonds, Inc.*, 729 F.3d 1248, 1260 (9th Cir. 2013). If so, the matter is dispositive. Several other circuits follow a similar approach. *See, e.g.*, *Williams v. Beemiller, Inc.*, 527 F.3d 259, 265 (2d Cir. 2008) (undertaking a functional analysis and citing decisions of the First, Third, Sixth, Seventh, and Tenth Circuits that have done so as well).

The parties have not cited, and I am not aware of, any appellate precedent on whether a decision to allow or deny discovery under § 1782 is dispositive.[3] Applying our "functional approach," I would hold that such decisions are dispositive.

The ultimate relief sought in a § 1782 application is court-ordered discovery. A decision on whether to quash a subpoena issued under § 1782 necessarily grants or denies "the ultimate relief sought." This sets § 1782 applications apart from discovery decisions in ongoing domestic civil or criminal proceedings. *See* 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3068.2 (2d ed. 1997) (making the same distinction and concluding that "[t]he sole purpose of the [§ 1782] proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter").

Although we have not previously decided whether rulings on motions to quash in § 1782 proceedings are dispositive under our functional approach, we have

---

[3] In dicta, the Tenth Circuit has stated that it "question[s]" whether a § 1782 application "constitutes a 'pretrial matter pending before the court' for the purposes of referring a matter to a magistrate judge under" a local rule concerning reference of non-dispositive discovery matters. *Phillips v. Beierwaltes*, 466 F.3d 1217, 1222 (10th Cir. 2006) (quoting 28 U.S.C. § 636(b)(1)(A)).

repeatedly held that such rulings are final, appealable orders for purposes of 28 U.S.C. § 1291. *See, e.g.*, *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 565–67 (9th Cir. 2011); *United States v. Sealed 1, Letter of Request for Legal Assistance from the Deputy Prosecutor Gen. of the Russian Fed'n*, 235 F.3d 1200, 1203 (9th Cir. 2000); *In re Letters Rogatory from Tokyo Dist. Prosecutor's Office, Tokyo, Japan*, 16 F.3d 1016, 1018 n.1 (9th Cir. 1994); *In re Request For Judicial Assistance*, 555 F.2d at 722. In so holding, we have emphasized the "important" distinction between § 1782 proceedings and discovery in typical civil and criminal cases. *In re Premises*, 634 F.3d at 565–66. We observed in *In re Premises* that in a domestic criminal case, "the district court's order enforcing a subpoena is but one step toward the ultimate resolution of the underlying criminal case." *Id.* at 566. In contrast, "the district court's subpoena order [in a § 1782 proceeding] is the district court's last, or 'final,' order because, critically, the underlying case in a § 1782 appeal necessarily is conducted in a *foreign* tribunal. Once the district court has ruled on the parties' motions concerning the evidentiary requests, there is no further case or controversy before the district court." *Id.*

Determining finality under § 1291 is similar (though not identical) to our functional approach for determining whether a decision is dispositive under § 636(b)(1)(A) and Rule 72. In light of our holding that after a district court has denied a motion to quash in a § 1782 application "there is no further case or controversy before the district court," *In re Premises*, 634 F.3d at 566, it would be anomalous to conclude that such a decision by the district court is not dispositive of the federal court proceeding, *see Flam*, 788 F.3d at 1047.

The procedure contemplated by § 1782 is analogous to an action brought by a domestic agency to enforce an administrative subpoena under 29 U.S.C. § 161. In both types of proceedings, an interested party seeks the aid of a federal court in compelling discovery for use in a proceeding before another tribunal—either a foreign tribunal (§ 1782) or a domestic administrative body (§ 161). Our sister circuits that have addressed the issue agree that a ruling on a motion to enforce an administrative subpoena is dispositive. *See EEOC v. City of Long Branch*, 866 F.3d 93, 100 (3d Cir. 2017) (holding that the district court erroneously treated the agency's motion to enforce a subpoena as a non-dispositive matter); *United States v. Mueller*, 930 F.2d 10, 12 (8th Cir. 1991) (per curiam) (holding that the district court properly conducted de novo review of a magistrate judge's proposed order resolving an IRS petition to enforce a discovery summons); *Aluminum Co. of Am., Badin Works, Badin, N.C. v. U.S. Envtl. Prot. Agency*, 663 F.2d 499, 501 (4th Cir. 1981) (holding that denial of a motion to quash an administrative search warrant was dispositive requiring de novo review by the district court); *United States v. First Nat'l Bank of Atlanta*, 628 F.2d 871, 873 (5th Cir. 1980) (raising sua sponte the issue of whether the district court made a de novo determination of the magistrate judge's order enforcing an IRS summons).

The Third Circuit's analysis is particularly instructive. In *City of Long Branch*, the court reaffirmed its prior holding that a motion to enforce an administrative subpoena is a dispositive motion because such a proceeding "is over regardless of which way the court rules." 866 F.3d at 100 (quoting *NLRB v. Frazier*, 966 F.2d 812, 817 (3d Cir. 1992)). "Once the court grants or quashes the agency subpoena, it determines with finality the duties of the parties. The district court proceeding is admittedly collateral to the [agency's]

pending administrative proceeding, but the question of whether or not to enforce the subpoena is the only matter before the court." *Frazier*, 966 F.2d at 817–18. The Third Circuit thus concluded that a ruling on a motion to enforce an administrative subpoena is "a final decision which dispose[s] entirely of the [agency's] business before the court." *Id.* at 818. A ruling on whether to quash a subpoena issued under § 1782 likewise "determines with finality the duties of the parties" in federal court. *See id.* at 817.

Khrapunov offers several arguments in defense of the district court's conclusion that rulings on motions to quash in § 1782 proceedings are non-dispositive. First, he argues that, under our functional approach, Objectors' motion to quash is ancillary and does not dispose of underlying claims or defenses. But the motion to quash is "ancillary" only to the foreign proceedings. As we held in *Flam*, the issue is whether the decision grants or denies the ultimate relief sought *in the federal court proceeding*, not whether the decision will dispose of claims or defenses in the underlying proceedings to be litigated elsewhere. 788 F.3d at 1046–47 (holding that remand orders are dispositive even though such orders do not resolve any underlying claim or defense).

Second, Khrapunov argues that the denial of a motion to quash in a § 1782 proceeding is non-dispositive because the prospect of additional litigation remains if, for example, the subpoenaed party fails to comply with the court's order. But that possibility exists in virtually all cases, even after the entry of a final judgment. For example, a plaintiff whose lawsuit results in a money judgment may face further litigation if the defendant does not willingly pay the judgment; yet there is no doubt the ultimate decision in a civil lawsuit (e.g., a money judgment) is dispositive within the meaning of § 636(b)(1) and Rule 72. The possibility that

a party may defy the court's order granting or denying the ultimate relief sought is not a basis for concluding that such an order is non-dispositive.

Third, Khrapunov relies on our decision in *Four Pillars Enters. Co. v. Avery Dennison Corp.*, 308 F.3d 1075 (9th Cir. 2002). But in that case, we did not decide, let alone consider, the issue presented here—whether rulings on § 1782 applications are dispositive. We had no occasion to consider the issue because the appellant did not raise it. Instead, the appellant argued only that the magistrate judge abused his discretion in denying the discovery, implicitly conceding that the magistrate judge was authorized to decide its discovery request under § 1782. It is axiomatic that cases are not authority for issues not considered. *See United States v. Vroman*, 975 F.2d 669, 672 (9th Cir. 1992); *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1288 (9th Cir. 1985) ("[U]nstated assumptions on non-litigated issues are not precedential holdings binding future decisions.").

Fourth, Khrapunov suggests that, because the court of appeals reviews a district court's decision on a § 1782 application for abuse of discretion, we should defer to the district court's conclusion that a decision on a § 1782 application is non-dispositive. Khrapunov misconstrues the standard of review. A decision on whether to issue a subpoena under § 1782 or whether to quash or limit the scope of such a subpoena is reviewed for abuse of discretion (assuming the threshold statutory elements are met). *Four Pillars*, 308 F.3d at 1078. In contrast, the determination of whether a decision is dispositive under § 636(b)(1) and Rule 72—i.e., whether the magistrate judge is authorized to decide the matter—is a question of law reviewed de novo. *Mitchell*, 791 F.3d at 1168; *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015) ("The authority of magistrate

judges 'is a question of law subject to *de novo* review.'" (quoting *United States v. Carr*, 18 F.3d 738, 740 (9th Cir. 1994))). In any event, "a district court abuses its discretion when it makes an error of law." *United States v. Hinkson*, 585 F.3d 1247, 1261 (9th Cir. 2009) (en banc) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

Finally, Khrapunov cites a practice of district courts within our circuit treating rulings on § 1782 applications as non-dispositive.[4] But the district court cases cited by Khrapunov rely on reasoning that doesn't square with our decisions interpreting § 636(b)(1) and Rule 72. Those district court cases, for example, fail to distinguish between § 1782 proceedings and discovery in domestic civil or criminal cases, conclude that § 1782 proceedings are ancillary to the underlying foreign proceedings, and rely on our non-holding in *Four Pillars*.

In cases where the district court erroneously interpreted a dispositive matter as non-dispositive—and thus reviewed the magistrate judge's ruling through a deferential lens—we have routinely vacated and remanded for the district court to consider the motion as a dispositive matter. *See Mitchell*, 791 F.3d at 1174; *Bastidas*, 791 F.3d at 1164; *Flam*, 788 F.3d at 1048; *United States v. Rivera-Guerrero*, 377 F.3d 1064, 1071–72 (9th Cir. 2004). Other circuits are in accord. *See City of Long Branch*, 866 F.3d at 101 (citing *Mitchell*, 791 F.3d at 1174, and *Flam*, 788 F.3d at 1048);

---

[4] Some district courts within the circuit have treated rulings on § 1782 applications as dispositive. *See, e.g.*, *Holder v. Holder*, 392 F.3d 1009, 1013 (9th Cir. 2004) (noting that the district court reviewed de novo the magistrate judge's report and recommendation); *Advanced Micro Devices v. Intel Corp.*, No. C 01-7033, 2004 WL 2282320, at *1 (N.D. Cal. Oct. 4, 2004) (reviewing magistrate judge's report and recommendation de novo).

*Williams*, 527 F.3d at 266; *Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 520 (6th Cir. 2001); *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 997 (10th Cir. 2000).  I would do the same here.

## II.

Because Objectors have not met their heavy burden of showing that this action is moot, we have jurisdiction and are thus duty-bound to decide the merits of this case.  I would hold that a decision on a motion to quash a subpoena issued under 28 U.S.C. § 1782 is not the type of pretrial matter the Federal Magistrates Act permits district courts to delegate to the final authority of magistrate judges.  When a magistrate judge is designated to conduct a hearing on such a motion, the magistrate judge should issue only a recommendation for the disposition (and, if applicable, proposed findings of fact).  If the recommendation is challenged, a judge of the district court must determine the matter de novo.

The majority's decision to remand for the magistrate judge to reconsider the threshold elements of § 1782 not only will cause unnecessary delay, it allows the majority to sidestep the unsettled question presented by the case.  We are missing an opportunity to clarify how § 1782 fits within our jurisprudence interpreting the Federal Magistrates Act.  I would vacate and remand for a district judge to determine the matter de novo.