**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GREGORY GLINER, In re Ex Parte Application of Gregory Gliner, for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings, | No. 24-4624 D.C. No. 3:24-mc-80087-JD |
| *Movant - Appellant.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
James Donato, District Judge, Presiding

Argued and Submitted March 3, 2025
San Francisco, California

Filed April 1, 2025

Before: Kim McLane Wardlaw, Richard A. Paez, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Bea

## SUMMARY[*]

### Discovery in Aid of Foreign Proceedings / First Amendment

The panel vacated the district court's order denying Gregory Gliner's application pursuant to 28 U.S.C. § 1782 to seek discovery from California company Dynadot, Inc., to identify the potential defendants for Gliner's defamation lawsuit in the United Kingdom.

Gliner sought to identify the anonymous operator of the PolitcialLore.com website and the allegedly pseudonymous author of an article published on the website. The district court denied Gliner's application in light of the First Amendment interests of the operator of the website and the author of the article.

The panel held that the district court's denial was an abuse of discretion because the record, at this preliminary procedural juncture, did not suggest that anyone's First Amendment interests were implicated. It is well-settled that the First Amendment protects a publisher's and an author's decision to remain anonymous. Foreign citizens outside U.S. territory, however, do not possess rights under the U.S. Constitution, and no evidence suggested that the operator or the author was a U.S. citizen or was present in the United States. In addition, the record did not support a concern about any U.S. audience's First Amendment right to receive information from abroad.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel vacated the district court's order and remanded for the district court to consider the § 1782 statutory factors and to exercise its discretion in deciding whether to grant discovery, guided by the factors articulated in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004).

## COUNSEL

Joseph R. Oliveri (argued), Clare Locke LLP, Alexandria, Virginia; Michele D. Floyd, Kilpatrick Townsend & Stockton LLP, San Francisco, California; for Movant-Appellant.

Nicolas A. Hidalgo, Matthew T. Cagle, and Nicole A. Ozer, American Civil Liberties Union Foundation of Northern California, San Francisco, California, for Amicus Curiae American Civil Liberties Union of Northern California.

## OPINION

BEA, Circuit Judge:

Pursuant to 28 U.S.C. § 1782, Gregory Gliner filed an *ex parte* application to seek discovery from Dynadot, Inc. ("Dynadot"),[1] a company headquartered in California, to identify the potential defendants for his defamation lawsuit in the United Kingdom. Specifically, Gliner seeks to identify the anonymous operator of the PoliticalLore.com website ("Website") and the allegedly pseudonymous author of an article published on that Website ("Article"), which article Gliner alleges is defamatory. The district court, without making any relevant factual findings, held that the First Amendment to the U.S. Constitution applied to the operator of the Website ("Operator") and the author of the Article ("Author") and thus denied Gliner's application "in light of their First Amendment interests." We find the district court abused its discretion and, therefore, vacate its order and remand.

### I.

Gliner, a dual citizen of the United Kingdom and the United States and the founder of Ironwall Capital Management LLP, is married to Veronica Bourlakova ("Veronica"), the daughter of Oleg Bourlakov ("Oleg"), a

---

[1] Applications pursuant to Section 1782 are customarily made *ex parte*. *In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976). Parties can contest § 1782 subpoenas by motions to quash or modify the subpoenas. *Id.*

Russian businessman.[2]  Gliner has lived with Veronica in London, England, since 2016.

In 2021, Oleg died.  Disputes over the inheritance of his wealth ensued.  According to Gliner, the parties opposed to Veronica's claims to Oleg's wealth have since launched a campaign to disparage him and his family.  At issue here is an Article [3] published under the name of "Edward Swensson" on the Website,[4] that accused Gliner of criminal conduct including embezzlement and theft, accusations that Gliner asserts are false and defamatory.  Gliner retained counsel ("U.K. counsel") and prepared to sue both the Operator and the Author for defamation in the United Kingdom.

---

[2] The factual recitation in this section is based on the declaration of Gregory D. Gliner; that of Joseph R. Oliveri, the counsel whom Gliner has retained to file his § 1782 application in the United States; and that of Alexandra Whiston-Dew, the counsel whom Gliner has retained to advise him on and to prosecute his contemplated defamation proceedings in the United Kingdom against the Operator and the Author.  All three declarations were filed with the district court in support of Gliner's § 1782 application.

[3] Edward Swensson, *Inheritance of Billionaire Oleg Burlakov – A Battle on an Epic Scale*, POLITICAL LORE (June 2, 2023), https://politicallore.com/inheritance-of-billionaire-oleg-burlakov-a-battle-on-an-epic-scale/36294.

[4] According to Gliner, the Website "bears all the hallmarks of a disinformation website—not a legitimate news site."  "Almost all of the articles on the [W]ebsite are Russian-centric, exhibit poor English, and contain over-the-top anti-Western rhetoric; the [W]ebsite is completely devoid of advertising; and although the site contains a link for companies that wish to advertise on it, the link leads to a dead-end, thus strongly suggesting that the [W]ebsite is independently funded and/or relies on paid-for content."

However, Gliner avers that he and his counsel could not determine the identities of the Operator and the Author.  He retained counsel in the United States ("U.S. counsel"), who conducted "detailed research" and concluded that "Edward Swensson" is "an alias/pseudonym and/or is a person located outside the United States."[5]  Gliner's U.S. counsel also could not identify who operates the Website.  He investigated the internet domain registration information for the Website, only to find that it is shielded from public disclosure.

There was a silver lining, though.  Gliner's U.S. counsel found that Dynadot, a company headquartered in San Mateo, California, provided the domain registration and privacy protection services for the Website.  And Dynadot's Terms of Use require people who use its services to provide "accurate and reliable contact details," including full names, postal addresses, and telephone numbers.  Gliner's U.S. counsel thus declares that he believes "Dynadot possesses documents and information that will identify or will lead to" the identities of the Operator and the Author.

Having failed to find any office or business presence of Dynadot in the United Kingdom, Gliner filed the instant § 1782 application to seek discovery from Dynadot in California.  Specifically, Gliner seeks the district court's issuance of two subpoenas: one to order production of documents by Dynadot and the other to order deposition testimony of a witness designated by Dynadot pursuant to Federal Rule of Civil Procedure 30(b)(6).  Gliner's requests for documents ask for (1) "[d]ocuments and [c]ommunications sufficient to identify the person(s) who

---

[5] Gliner's U.S. counsel identified two people by the name of "Edward Swensson" in the United States, but he avers that they bear no connections with the Website.

own and/or registered and/or engaged the services of Dynadot in any respect with regard to" the Website; and (2) "[d]ocuments and [c]ommunications sufficient to identify the person(s) identified as 'Edward Swensson' in the Article." The requested deposition will help authenticate and explain the documents produced.

On May 28, 2024, the district court denied Gliner's § 1782 application in a one-paragraph, text-only order, which is provided below in full:

> Gregory Gliner has applied *ex parte* for an order permitting Gliner to obtain discovery from nonparty Dynadot, Inc. (Dynadot) in aid of foreign proceedings in the United Kingdom, pursuant to 28 U.S.C. § 1782. The Court retains wide discretion to grant discovery under Section 1782, *Intel Corp. v. Advanced Micro Devices, Inc.*, 642 U.S. 241, 260–61 (2004), and the application is denied. Gliner seeks to issue subpoenas to Dynadot to uncover the identities of the anonymous operators of the website PoliticalLore.com, and the anonymous author of an allegedly defamatory article about Gliner published on the website. "An author's decision to remain anonymous is an aspect of the freedom of speech protected by the First Amendment." *In re Grand Jury Subpoena*, *No. 16-03-217* [sic], 875 F.3d 1179, 1185 (9th Cir. 2017) (quoting *In re Anonymous Online Speakers*, 661 F.3d 1168, 1173 (9th Cir. 2011)) (cleaned up). Gliner's application does not address why disclosure of the website

> operator and author's identities would be justified or appropriate in light of their First Amendment interests, and is consequently denied.

Gliner's § 1782 application indeed did not address any potential First Amendment issue.

Gliner timely moved to alter or amend the district court's judgment pursuant to Federal Rule of Civil Procedure 59(e), this time arguing that the First Amendment is not implicated by his § 1782 application, at least not on this record. On June 26, 2024, the district court issued a one-sentence order: "Gliner's request for reconsideration" "is denied for lack of good cause." Gliner timely appealed.

## II.

We have jurisdiction under 28 U.S.C. § 1291. *CPC Pat. Techs. Pty Ltd. v. Apple Inc.*, 119 F.4th 1126, 1131–32 (9th Cir. 2024). The district court's decision under Section 1782 is reviewed for abuse of discretion. *Khrapunov v. Prosyankin*, 931 F.3d 922, 924 (9th Cir. 2019).

## III.

Congress enacted 28 U.S.C. § 1782 to provide "efficient assistance to participants in international litigation" and to encourage "foreign countries by example to provide similar assistance to [U.S.] courts." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 252 (2004) (citation omitted).

Under Section 1782, a district court may order discovery in the United States for use in a foreign legal proceeding if, as relevant here, the following three requirements are satisfied: (1) the person from whom the discovery is sought resides or is found in the district of the district court to which

the application is made; (2) the discovery is for use in a proceeding before a foreign tribunal that is within reasonable contemplation; and (3) the applicant is an interested person in that foreign proceeding.[6]  28 U.S.C. § 1782(a); *Intel Corp.*, 542 U.S. at 259.

Even where all three statutory requirements are met, district courts still retain discretion to decide whether to grant discovery under Section 1782. *Intel Corp.*, 542 U.S. at 264.  In exercising that discretion, district courts are guided by the four non-exhaustive factors that the Supreme Court articulated in *Intel* ("*Intel* factors"): (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding";[7] (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) whether the discovery request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a

---

[6] "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."  28 U.S.C. § 1782(a).  No such privilege has yet been asserted in this case.  Section 1782 also "does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him."  28 U.S.C. § 1782(b).  At this *ex parte* stage in the proceedings, we do not know whether Dynadot will voluntarily respond to Gliner's discovery requests.

[7] If "the person from whom discovery is sought is a participant in the foreign proceeding," "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because a "foreign tribunal has jurisdiction over those appearing before it" and "can itself order them to produce evidence." *Intel Corp.*, 542 U.S. at 264.

foreign country or the United States"; and (4) whether the discovery request is "unduly intrusive or burdensome." *Id.* at 264–65.

In this case, the district court, without expressly analyzing any of the statutory requirements under Section 1782 or any of the *Intel* factors, denied Gliner's § 1782 application "in light of" the Author and the Operator's "First Amendment interests."[8] We find the district court's cursory denial amounted to an abuse of discretion because the present record does not suggest that anyone's First Amendment interests are implicated.

### A.

The United States has a long tradition of anonymity in public discourse, dating back to our founding era—from Alexander Hamilton, James Madison, and John Jay publishing *The Federalist Papers* under the pseudonym "Publius," *In re Anonymous Online Speakers*, 661 F.3d 1168, 1172–73 (9th Cir. 2011), to Thomas Jefferson and James Madison secretly founding and funding the *National Gazette, see* Jeffrey L. Pasley, *The Two National "Gazettes": Newspapers and the Embodiment of American Political Parties*, 35 EARLY AMERICAN LITERATURE 51, 65–77 (2000).

Accordingly, it is well-settled that the First Amendment protects a publisher's and an author's "decision to remain anonymous." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *see also Talley v. California*, 362 U.S. 60,

---

[8] We can conceive of situations in which a potential First Amendment issue may be analyzed under the second, the third, and/or the fourth *Intel* factors. The district court here did not specify which *Intel* factor it considered in denying Gliner's § 1782 application.

64 (1960) ("The obnoxious press licensing law of England, which was also enforced on the Colonies was due in part to the knowledge that exposure of the names of printers, writers[,] and distributors would lessen the circulation of literature critical of the government."). Today, "online speech stands on the same footing as other speech." *In re Anonymous Online Speakers*, 661 F.3d at 1173. "As with other forms of expression, the ability to speak anonymously on the Internet promotes the robust exchange of ideas and allows individuals to express themselves freely without 'fear of economic or official retaliation . . . [or] concern about social ostracism.'" *Id.* (quoting *McIntyre*, 514 U.S. at 341–42).[9]

Here, the district court denied Gliner's § 1782 application due to its assumed impacts on the Operator and the Author's First Amendment right of anonymity. But the First Amendment may not protect the Operator or the Author at all. "[F]oreign citizens outside U.S. territory do not possess rights under the U.S. Constitution," including those under the First Amendment. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 591 U.S. 430, 433 (2020); *see also TikTok Inc. v. Garland*, 145 S. Ct. 57, 66 n.2 (2025). At this preliminary procedural juncture, no evidence suggests that

---

[9] This constitutional right to anonymity, like other First Amendment rights, is not absolute. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 708–09 (1972) (holding that, under the First Amendment, journalists do not have an absolute immunity from grand jury subpoenas for criminal investigations); *Garland v. Torre*, 259 F.2d 545, 548 (2d Cir. 1958) (cited with approval by *Branzburg*, 408 U.S. at 685–86, and pointing out that the "concept that it is the duty of a witness to testify in a court of law [even for civil suits] has roots fully as deep in our history as does the guarantee of [free speech and] a free press").

the Operator or the Author is a U.S. citizen or is present in the United States.

B.

Absent national security concerns, the First Amendment also protects U.S. audiences' right to "receive information and ideas" from abroad.  *Stanley v. Georgia*, 394 U.S. 557, 564 (1969); *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 743–44 (9th Cir. 2021); *see also Kleindienst v. Mandel*, 408 U.S. 753, 762–65 (1972) (recognizing that the First Amendment rights enjoyed by the audience of a conference in the United States were implicated when a foreign speaker of the conference was denied admission into the United States).

The discovery Gliner seeks here is not directed at the U.S. audience of the Website and, accordingly, will not *directly* implicate their First Amendment rights.  *See Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 306–07 (1965) (declaring a law unconstitutional which required people in the United States who wished to receive "communist political propaganda" mails from abroad to so notify the post office in writing in order for the relevant mails to be delivered).  Yet it is possible that the First Amendment rights of the U.S. public may be *indirectly* implicated.   For example, identifying an author may cause him to remove his article from public discourse, thereby depriving the U.S. public of the information contained in the article.

The present record, however, does not support this First Amendment concern.  At this point in the proceedings, it is unclear whether the Website has any U.S. users—the facts that it is largely in English and that its coverage includes so-called news about the United States do not tell us much, as U.K. audiences, of course, can also read news about the

United States in English. And the mere technical accessibility of the Website in the United States is not sufficient to substantiate a First Amendment claim on behalf of the U.S. public. *See, e.g.*, *Thunder Studios*, 13 F.4th at 743 (holding that the First Amendment was implicated because the defendants' speech there was "directed at and received by California residents"). The text of the Article also does not suggest that it was directed at or received by any audience in the United States.

Additionally, the district court has not had an opportunity to consider the possibilities of limiting the requested discovery in this case. Should the district court grant Gliner's application, it can take steps to protect the Operator and the Author's identities from disclosure outside Gliner's U.K. proceeding and from disclosure to Gliner himself. It is unclear at this stage whether such limited discovery, if feasible, would chill any speech so much so that the First Amendment rights of the Website's U.S. audience, if any, would be affected.[10]

---

[10] District courts generally have the discretion to tailor the scope of discovery to account for various competing interests. For instance, a district court can issue a protective order, (a) limiting the disclosure of the discovered identities only to a § 1782 applicant's counsel, but not to the applicant, *see, e.g.*, *In re Anonymous Online Speakers*, 661 F.3d at 1177–78; (b) permitting the use of the discovered identities in a contemplated foreign proceeding only if the applicant successfully seeks the relevant tribunal's leave to seal the identities, *see, e.g.*, *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124 HRL, 2009 WL 88348, at *5 (N.D. Cal. Jan. 13, 2009); and/or (c) barring the use of the discovered identities in any proceedings other than the one reasonably contemplated at the time of the § 1782 application, *see, e.g.*, *Mirana v. Battery Tai-Shing Corp.*, No. C08-80142MISCJF(HRL), 2009 WL 1635936, at *4 (N.D. Cal. June 8, 2009). District courts can enforce such a protective order based on its jurisdiction over the parties appearing before it. *See, e.g.*,

Hence, at this preliminary procedural juncture, the evidence in the record is insufficient to suggest that Gliner's requested discovery may curtail the First Amendment right of the U.S. public to receive information and ideas.

IV.

In conclusion, no evidence in the current record suggests the implication or infringement of any person's First Amendment rights, yet the district court assumed both in denying Gliner's § 1782 application, neglecting the Supreme Court's admonition against adjudicating § 1782 applications through the lens of U.S. domestic analogues. *Intel Corp.*, 542 U.S. at 263. This neglect constituted a legal error and, accordingly, an abuse of discretion. *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009). We therefore vacate the decision below and remand. On remand, the district court should consider the § 1782 statutory requirements and exercise its discretion under *Intel* in the first instance.

This conclusion does not mean First Amendment rights can never be asserted in this case. If the district court decides on remand to issue the requested subpoenas, the court shall order Dynadot to give, or attempt to give, notice of the subpoenas' issuance to the Operator, the Author, and any other affected persons, if known; and authorize Dynadot and any parties whose First Amendment rights may be affected to contest the subpoenas by filing a motion to quash or modify them. *See, e.g.*, *In re Matsumoto*, No. 5:23-MC-

---

*Cryolife*, 2009 WL 88348, at *5. And the Supreme Court has granted district courts discretion in discerning the prospect of compliance with such a protective order in the § 1782 context. *Intel*, 542 U.S. at 264–65.

80230-EJD, 2023 WL 6959279, at *4 (N.D. Cal. Oct. 19, 2023).

We are comfortable with a relatively permissive approach at the § 1782 application stage here because we are confident that First Amendment protection, if in fact applicable, can be afforded down the road.

**VACATED AND REMANDED.**